IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

DAVID RABB,

      Petitioner,

v.                          Case No. 2:09-cv-00159

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

On February 23, 2009, Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (docket sheet document # 1) and a Motion for Stay and Abeyance of Petition (# 2).[1] This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On April 1, 2009, the undersigned ordered that Respondent file an answer or other response to the petition, and to the Motion for Stay and Abeyance, by May 29, 2009 (# 5).  On May 28, 2009,

---

[1] Applying the "prisoner mailbox rule," however, the undersigned will consider the petition to have been filed as of February 20, 2009, the date of the postmark on the envelope in which the petition was mailed.  See Houston v. Lack, 487 U.S. 266, 276 (1988).  Petitioner had to have given the petition to prison officials to be mailed no later than that date.

Respondent filed a Response to Petition for Writ of Habeas Corpus (# 6), a Motion to Dismiss Petition as Untimely Filed, with accompanying exhibits (# 7), and a Memorandum of Law in support thereof (# 8), as well as a Response in Opposition to the Motion for Stay and Abeyance (# 9).  Respondent's motion asserts that Petitioner's section 2254 petition is untimely under 28 U.S.C. § 2244(d)(1) and that there is no justification for equitable tolling of the statute of limitations.  Respondent also asserts that there is no basis for a stay of this case pending the exhaustion of Petitioner's <u>Zain III</u> habeas corpus petition.

On June 30, 2009, Petitioner filed a "Reply to State's Answer" (hereinafter "Petitioner's Response"), including exhibits (# 10), and a Memorandum of Law (# 11).  On July 10, 2009, Respondent filed a Reply to Petitioner's Response (# 12).  The matter is now ripe for determination.

## **PROCEDURAL HISTORY**

Following a jury trial in the Circuit Court of Kanawha County, on December 12, 1997, Petitioner was convicted of one count of Malicious Wounding (Count One), two counts of Kidnapping, one count on which the jury recommended mercy (Counts Two and Four), and one count of Aggravated Robbery (Count Four).  (# 7, Ex. 1). Petitioner was represented by Barbara Brown and Chanin Wolfinbarger, of the Kanawha County Public Defender's Office, during his criminal proceedings.  By Order entered May 18, 1998,

the Circuit Court of Kanawha County sentenced Petitioner to consecutive terms of 2-10 years in the penitentiary on Count One, life without the possibility of parole on Count Two, and 46 years on Count Three.  Petitioner was also sentenced to a concurrent term of life with the possibility of parole on Count Four.  (Id.)

Petitioner, by counsel, filed a Petition for Appeal of his convictions and sentences to the Supreme Court of Appeals of West Virginia (the "SCAWV") on April 8, 1999.  (Id., Ex. 2).  The SCAWV refused the Petition for Appeal on May 4, 1999.  (Id.)

Petitioner also filed a Petition for a Writ of Certiorari in the Supreme Court, which was denied on October 12, 1999.  Rabb v. West Virginia, 528 U.S. 935 (1999).  (Id., Ex. 3).

The procedural history of Petitioner's state habeas corpus proceedings will be discussed in greater detail infra.

## ANALYSIS

**A.   Respondent's Motion to Dismiss Petition as Untimely.**

On April 24, 1996, a one-year limitation for filing of federal habeas corpus petitions was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA").  The AEDPA provides, in part, that:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

3

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Section 2244(d)(2) further provides:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

The circumstances surrounding Petitioner's state habeas corpus proceedings are significant to a determination of whether his section 2254 petition is time-barred.   Petitioner's conviction became final on October 12, 1999, the date that the Supreme Court denied certiorari.   Thus, under section 2244(d)(1)(A), Petitioner had until October 12, 2000, to file a section 2254 petition, unless Petitioner had properly filed an application for state post-conviction or other collateral review, which would toll the statute during the pendency of those proceedings.   28 U.S.C. § 2244(d)(2).

On September 18, 2000, Petitioner filed his first habeas corpus petition in the Circuit Court of Kanawha County, which

4

tolled the statute of limitations.  (Rabb v. Painter, Case No. 00-MISC-350).  Based upon the undersigned's calculation, at that time, 341 days had passed, and Petitioner had 24 days remaining under the statute of limitations.  The statute of limitations is normally tolled throughout the pendency of the state court collateral proceedings, including an appeal to the SCAWV.  28 U.S.C. § 2244(d)(2).  Had Petitioner filed a timely Petition for Appeal from the denial of his first habeas corpus petition, the statute would have been tolled until the SCAWV ruled on the Petition for Appeal. However, if a Petition for Appeal is not filed, normally, the tolling period would end on the date that the Petition for Appeal should have been filed.  See Taylor v. Lee, 186 F,3d 557, 560 (4th Cir. 1999); Harris v. Hutchinson, 209 F.3d 425, 327 (4th Cir, 2000)(upon final disposition of state post-conviction proceeding, running of the statute of limitations resumes).

In Petitioner's first habeas case, the Circuit Court entered the order denying the petition on the merits on August 21, 2001. Respondent has provided copies of documents filed in that case after the entry of the order denying habeas relief, which the undersigned will discuss in detail.

The first document is a letter from Petitioner to the Clerk dated August 29, 2001, which was received and filed on August 30, 2001, which enclosed Petitioner's pro se Notice of Appeal and a Motion for Appointment of Appellate Counsel.  The letter states:

5

Dear Ms. Gatson:

On the 21st of August 2001, the Circuit Court of Kanawha County denied my petition for a writ of habeas corpus. I understand the initial deadline in which to appeal the Court's order will expire on the 20th day of December 2001. Please file the enclosed motion for appointment of appellate counsel and to extend the appellate period. I asked you to submit the motion to Judge Paul Zakaib, Jr. Chief Judge, at the appropriate moment.

Please send me a copy of the docket sheet in the above-captioned case. Your timely consideration of this request is appreciated.

Sincerely,

David D. Rabb

(# 12-2, Ex. 8 at 48). The Motion for Appointment of Appellate

Counsel states in pertinent part:

1. On the 21st day of August 2001, the Honorable James C. Stucky, Judge entered an order denying my petition for a post-conviction writ of habeas corpus.

2. On a prior date, petitioner filed an application for Appointment of Counsel. This motion was never ruled on by the Circuit Court of Kanawha County.

3. Upon receiving the court's ruling, petitioner submitted for filing his Notice of Intent to Appeal to the Clerk of the Circuit Court of Kanawha County, WV. A copy was sent to the prosecuting attorney.

4. It is petitioner's understanding that any petition challenging the judgment of the Circuit Court must be submitted to the Supreme Court of Appeals within four (4) months of the judgment of the 21st of August 2001.

5. Petitioner needs the assistance of counsel to help me prepare an [sic; a] petition for appeal in the above entitled civil action.

6

* * *

> 10.  The initial four month appellate period will expire
>      on the 20th of December, 2001, and petitioner would
>      respectfully request an extension of time in which
>      to file an appeal by two months, or such time as
>      the Court deems reasonable.

(Id. at 50-52).

Then, on August 31, 2001, Petitioner wrote another letter to the Clerk of the Circuit Court correcting his statement that Judge Stucky had not ruled on Petitioner's previously-filed motion for appointment of counsel; Petitioner clarified that such motion had been denied.  (Id. at 54).

On October 9, 2001, Judge Stucky entered an Order appointing the Kanawha County Public Defender to represent Petitioner on appeal.  (Id. at 61).  The Order did not address Petitioner's request for an extension of the time period for filing a petition for appeal.  (Id.)

On November 5, 2001, the Kanawha County Public Defender's Office filed a Motion to Withdraw As Counsel, after determining that Petitioner had raised claims of ineffective assistance of counsel against his trial counsel, who were employees of the Public Defender's Office.  (Id. at 63-65).

On November 10, 2001, Judge Charles E. King, Jr., signed an Order allowing the Kanawha County Public Defender's Office to withdraw as counsel for Petitioner and appointing attorney Herbert L. Hively, II, to represent Petitioner on his habeas appeal.  (Id.

7

at 66-67).   According to a Notice of Delivery in the file, this
Order was mailed to Mr. Hively on November 27, 2001.  (Id. at 68).

The next document in the file is a letter from Petitioner to
the Clerk of the Circuit Court dated December 7, 2001, which was
docketed in Petitioner's first habeas case on December 11, 2001.
The letter states:

> Dear Ms. Gatson:
>
> On the 21st of August 2001, the Circuit Court of
> Kanawha County denied my petition for a writ of habeas
> corpus.  On the 5th day of September 2001, I entered a
> motion for appointment of appellate counsel and to have
> the time to file an appeal extended.   The appellate
> counsel was granted, but I heard nothing regarding the
> extension of time.  Thus, I am resubmitting a motion for
> an extended time period of appellate time.  To this date,
> I have not been able to contact the appointed counsel.
> This is the reason that I am filing this in his stead.
> Please file the enclosed motion.
>
> Also, please send me another copy of the docket
> sheet in the above-captioned case.  Furthermore, if you
> could inform me as soon as possible [of] the ruling on
> the enclosed motion.  I want to thank you for your time
> and consideration.
>
> Sincerely,
>
> David D. Rabb

(Id. at 69).  Petitioner included another Motion for Extension of
Appellate Period, which was also docketed on December 11, 2001.

(Id. at 70-72).  The new motion states in pertinent part:

> The initial four (4) month period will expire on the 20th
> day of December 2001.  Thus, petitioner is again moving
> for an extension of time in which to file appeal by two
> months, or such time as the Court deems reasonable.  This
> will give new counsel time to go over petition and fully
> prepare a thought out and competent response addressing

8

the appellate issues. <u>West Virginia Code</u> § 58-5-4.

Wherefore, movant respectfully moves that this court enter an order, in the interests of justice and for good cause, extending the period in which to file a petition for appeal to the 20th day of February, 2002.

(<u>Id.</u> at 72).

On December 19, 2001, the day before the appeal period was to expire, Petitioner's court-appointed counsel, Mr. Hively, filed another Motion to Extend Period to File Petition for Appeal. (<u>Id.</u> at 73-74). That motion was docketed on December 21, 2001. (<u>Id.</u> at 73). Mr. Hively asked for a 120-day extension of time in that motion. (<u>Id.</u>) No Petition for Appeal was filed as of the four-month deadline.

Having still received no rulings on any of these motions for extension of time, Petitioner filed yet another Motion for Extension of Appellate Period on March 7, 2002. (<u>Id.</u> at 75-78). That motion states in pertinent part:

5. On or about the 28th day of November 2001, the movant was informed that the motion was granted and new counsel had been appointed. The new counsel was Herbert L. Hively, II.

6. On or about the 30th day of November 2001, movant mailed to appointed counsel a copy of the petition and denial. To date, movant has not been able to contact counsel nor has counsel attempted to contact movant.

* * *

9. Appellate counsel on December 19, 2001, requested a time extension which was for 120 days. This four (4) month period would have expired on the 20th day of April 2001 [sic; 2002].

9

      Movant has tried to notify the court of the situation concerning counsel's inability to inform him of the status of the appeal being prepared and to seek guidance from the court as to what action can be taken. This too has been to no avail.  Petitioner has no idea as to what has or has not been filed on his behalf by counsel.

      Thus, petitioner is again moving for an extension of time in which to file appeal by 120 days, or such time as this esteemed Court deems reasonable.  West Virginia Code § 58-5-4.

      Wherefore, movant respectfully moves that this court enter an order, in the interests of justice and for good cause, extending the period in which to file a petition for appeal.

(Id. at 76-77).

In the file, there are two letters dated April 18, 2002, which appear to be directed to the Clerk of the Court and Judge Stucky. However, the copies of the documents from the microfiched file are too difficult to read.  The second page of the letter to Judge Stucky appears to be again be requesting additional time to file a Petition for Appeal.  (Id. at 92-95).

Having still received no rulings on the motions for extension of time, and, apparently, having had no communication with his appointed counsel, on May 29, 2002, Petitioner filed a pro se Motion to Show Cause which states as follows:

      This Court, on or about November 21, 2001, appointed Herbert Hively, II to perfect an appeal of the petitioner's Writ of Habeas Corpus.  Since the date of appointment, the Petitioner [] has:

1.    Tried to contact Mr. Hively by phone.  The petitioner, being an inmate, can only make collect calls.  Counsel has a local collect call block on

his phone.

2.   Petitioner has written to counsel on numerous dates to no avail.  Petitioner's family contacted counsel on several occasions and ascertained that counsel had indeed received correspondence and was going to be contacting the petitioner.  Petitioner has received no correspondence what so ever from counsel to date.  All legal mail is documented coming into or leaving out of the institution.

3.   On December 21, 2001, counsel entered a Motion for Extension of Appellate Period (120 days) in order to prepare for the appeal.  As the court knows, there is a four month period in which to file any appeal of the court's judgment.  Not only did counsel fail to respond to petitioner's pleas to contact him so that the appeal could be perfected in the time frame set forth by the court, but he allowed for the four months requested to come and go without any filing or reason.

4.   Petitioner has made several attempts within his limited abilities to ensure that deadlines and procedures were and followed.  Petitioner has motioned the court for an extension of appellate period on his own.  As well, he has written letters to the court asking for guidance in this situation. As the court is also aware, that in order for the petitioner to proceed into the Federal Court he must exhaust his state remedies.  Petitioner is attempting to do such, but has been hampered by counsel's overt refusal to act in his behalf as ordered by his appointment.

WHEREFORE, the petitioner moves this court to GRANT this Motion to Show Cause, to summons Counsel and Petitioner before this court by whatever means the court finds appropriate, to have a hearing in the matter to determine what the cause of delay was and is, in concern with the matters contained herein, or, relieve Counsel of his duties and appoint new Counsel.

(Id. at 79-80).

On June 11, 2002, Petitioner wrote another letter to the Clerk

of the Circuit Court in which he states that he had filed a second

habeas corpus petition, and that he wished to file a Motion to Amend Pleadings, concerning that petition. (<u>Id.</u> at 84).[2]

On June 14, 2002, the Clerk docketed a motion in Case No. 00-MISC-350 in which Petitioner states that he wished to add a claim for relief.  The motion states in pertinent part:

> 8) In the six months since his appointment, Mr. Hively has not discussed petitioner's case with petitioner, he has not prepared a petition for appeal, and he has not submitted a petition for appeal to the Supreme Court of Appeals of West Virginia.
>
> 9) In May, 2001, petitioner submitted a second petition for a writ of <u>Habeas Corpus ad Subjiciendum</u> alleging two grounds for relief not advanced in the earlier petition.
>
> Wherefore, petitioner respectfully requests this Court to grant Petitioner leave to amend his pleading previously submitted to include as an issue for relief the denial of meaningful and effective assistance of counsel on appeal arising from the failure of Mr. Hebert Hively to comply with this Court's order of the 27th of November, 2001.

---

[2]  The copy of Petitioner's second Kanawha County habeas corpus petition (<u>Rabb v. Coleman</u>, Case No. 02-MISC-232) that has been provided to this court has a file stamp dated June 12, 2002. Plaintiff's letter and "Motion to Amend Pleadings" state that he had previously filed a new habeas corpus petition in May of 2002. It appears, however, that the petition was not docketed until June 12, 2002.  The second petition raised two claims for relief that had already been raised and denied in Petitioner's direct appeal and first habeas corpus proceeding (that Petitioner should have been sentenced to a term of years for kidnapping Jay Ming Chu, who was returned alive and without bodily harm, and that Petitioner was denied the right to a fair trial due to racial bias in jury selection), and also raised two additional claims for relief that had not been previously raised, alleging that Petitioner's sentence for aggravated robbery was disproportionate to the crime. (# 12-3, Ex. 9 at 8-13).

(<u>Id.</u> at 85-86).[3]

On June 19, 2002, the Clerk of the SCAWV wrote a letter to Petitioner stating that Mr. Hively "is in the process of filing a petition for appeal." (# 1-2 at 19).

On October 9, 2002, Mr. Hively wrote a letter to Judge Stucky, which states:

> Dear Judge Stucky:
>
> I was writing to inquire about my representation in this matter. In Miscellaneous Case No. 00-MISC-350 there are two orders; one denying the appointment of counsel for Mr. Rabb for his writ of habeas corpus to the Supreme Court and a second one entered a couple of months later appoints me. I was writing to inquire about that. The second Order was entered by Judge King. I await your reply.
>
> Sincerely,
>
> Herbert L. Hively, II

(<u>Id.</u> at 88).

Also on October 9, 2002, Mr. Hively wrote a letter to the Clerk of the Court requesting a copy of the entire case files for Petitioner's criminal and habeas corpus cases. (<u>Id.</u> at 89).

On November 6, 2002, Judge Stucky wrote a letter to Mr. Hively which states:

---

[3] Confusion arises from this document, as the Final Order had already been entered in Case No. 00-MISC-350, and the only issues pending before the Circuit Court in this matter were the motions for extension of the time period for filing a petition for appeal in the SCAWV. It is possible that Petitioner intended this claim to be considered as part of his second habeas petition (Case No. 02-MISC-232).

Dear Mr. Hively:

Please be advised that you have been appointed as appellate counsel to represent the above named petitioner in Civil Action No. 00-MISC-350 per Order entered on November 10, 2001 and field [sic; filed] with the Kanawha County Clerk's Office on November 27, 2001.

If you need additional information or have questions regarding this matter, please call me at 357-0364.

Very truly yours,

JAMES C. STUCKY
Circuit Judge

(Id. at 96).

As far as the undersigned can tell, Judge Stucky never ruled on any of the motions for extension of time filed in Case No. 00-MISC-350, and Mr. Hively never filed a Petition for Appeal concerning the denial of the habeas corpus petition in that matter. Rather, the focus turned to Petitioner's second habeas corpus matter filed in the Circuit Court of Kanawha County (Case No. 02-MISC-232).

According to the docket sheet for that case, after the second petition was filed and served on the Respondent, Mr. Hively and William Valentino were appointed to represent Petitioner in that habeas corpus proceeding by Order entered on November 15, 2002. On June 30, 2003, Petitioner wrote a letter to the Clerk of the Circuit Court enclosing a letter to Judge Stucky and inquiring as to which judge was assigned to his second habeas corpus petition filed in June of 2002 (Case No. 02-MISC-232). (Id. at 97). The

14

letter to Judge Stucky states:

Dear Sir:

The reason for my writing you is twofold: One I need to ascertain the exact function of the appointed counsels, Herbert Hively and William Valentino. I have been attempting to bring this petition to a close and have relied on counsel to no avail. I do understand that this is a complex case and time is needed, but I've not been kept informed as to the progress of the appeal other than that more time is needed. In fact, Mr. Hively has yet to respond to my numerous requests to contact me. Instead, I have had to ask relatives to contact him and they relay the messages. This is disconcerting at times. I am sure he is a capable attorney and I have little doubt about his abilities, but much time have expired and nothing has been accomplished.

I am not well versed in the exact procedures that must be followed in this instance; thus, I am writing to you. In November of 2002 your office sent me a copy of a letter appointing Mr. Hively again. I was somewhat perplexed as to the reason for this. To date, as far as I am aware, my petition is still pending in your court. If I am mistaken, please inform me. I am under the impression that we have to file the appeal in your court and then it is forwarded to the supreme court.

The second reason for my writing to you is intrinsic to the first. I am requesting that a status briefing be afforded me so that we can expedite this situation. I have been told that you are a shrewd and fair servant of the law. I trust that you will assist me in my endeavor. If there is any information that you may need to facilitate you, please do not hesitate to contact me. I look forward to hearing from you or your office. Thank you, your honor, for your time, patience, and consideration in this matter.

Respectfully,

David D. Rabb

(Id. at 98).

According to the docket sheet for Petitioner's second habeas corpus proceeding (02-MISC-232), the matters in that petition were briefed by the parties and at least one hearing was held with Petitioner being present in person.  (# 7-2, Ex. 5 at 14).  On March 12, 2008, Judge Stucky entered a Final Order denying Petitioner relief on his second habeas petition.  (Id. at 15). Ultimately, on October 3, 2008, Petitioner's counsel filed a Petition for Appeal from the denial of that habeas corpus petition, which was refused on January 27, 2009.  (Id., Ex. 6).

Petitioner then filed the instant section 2254 petition on February 23, 2009.

Respondent's Motion to Dismiss asserts that Petitioner's current section 2254 petition is untimely under 28 U.S.C. § 2244(d).  Respondent contends:

> Petitioner's one-year limitation period began to run on October 13, 1999, and ran for 340 days until Petitioner filed his first petition for post-conviction habeas corpus relief in state court on September 18, 2000.  With 25 days remaining in the one-year limitation period, the statute was tolled during the pendency of Petitioner's first state habeas proceeding, As previously noted, Petitioner's circuit court habeas petition was denied on August 21, 2001.  Petitioner then had four months to appeal that decision to the West Virginia Supreme Court of Appeals.  See W. Va. Code § 58-5-4; W. Va. R. App. P. Rule 3(a).  The four-month appeal period expired on December 21, 2001.  The statute then began to run again on December 22, 2001, and expired 25 days later on January 16, 2002.  Petitioner's second state habeas petition filed on June 12, 2002, after the expiration of the statute, had no tolling effect.
>
> As Petitioner filed the instant federal petition on February 23, 2009 - more than seven years after the last

16

date on which he could timely file - it is clearly
outside the limitation prescribed by the AEDPA and is now
time-barred.  Accordingly, the present § 2254 petition
should be dismissed with prejudice for failure to file
within the limitation period prescribed by 28 U.S.C. §
2244(d)(1).

(# 8 at 6-7).

Petitioner's Response argues as follows:

Petitioner filed timely motions which were part and
parcel to the collateral attacking of his claims
(conviction).  He also met all requirements according to
West Virginia Rules of Appellate Procedure § 58-5-4
(which allows for appellate extension of time with show
of good cause) in regards with a Notice of Intent to
Appeal and showed good cause in his motion to extend the
period in which he could file his appeal.

In regards to the equitable tolling of time issue
that petitioner wishes the court to address if there is
a finding that the petition is not timely, petitioner
realizes that, "Equitable tolling is to be applied to
prevent the application of the statutory deadline . . .
when extraordinary circumstances have worked to prevent
an otherwise diligent petitioner from filing his petition
. . ."  It is believed, as can be inferred from
previously statement in this reply, that the state's
conduct prevented the petitioner from actually filing a
timely petition through the misleading language in
regards to the appeal of the circuit court's final
judgment.  Any delay that this honorable court may find
can be circumvented by the circuit court's action.

(# 10 at 2-3).

The undersigned construes Petitioner's Response as a request
for equitable tolling of the statute of limitations.  The United
States Court of Appeals for the Fourth Circuit has held that the
limitation period set forth in 28 U.S.C. § 2244(d) is subject to
equitable tolling.  See Harris v. Hutchinson, 209 F.3d 325, 329-330

(4th Cir. 2000).[4]

As to when equitable tolling should apply, the Fourth Circuit has stated:

> We believe, therefore, that any resort to equity must be reserved for those rare instances where - due to circumstances external to the party's own conduct - it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

Id. at 330.  The Court opined that equitable tolling should apply in "two generally distinct kinds of situations:" (1) where a plaintiff/petitioner is prevented from asserting his claim by some kind of wrongful conduct on the part of the defendant/respondent; and (2) where extraordinary circumstances beyond the plaintiff/petitioner's control made it impossible to file the claims on time.  Id.

Petitioner's Response further states:

> What the state concludes is that since the petition for appeal was not presented to the appellate court in-time, that the tolling period was not applicable.  However, petitioner asserts that considering the circumstances surrounding the filing of the appeal and the subsequent filing and combining of all other petitions with the second habeas petition that due diligence and extra-ordinary circumstances and grounds for equitable tolling exist and have been demonstrated.

> During time that second petition was filed, petitioner was under the impression that the appeal of the first

---

[4]    The Supreme Court has not specifically ruled on whether section 2244(d) allows for equitable tolling.  However, in Lawrence v. Florida, 127 S. Ct. 1079, 1085 (Feb. 20, 2007), the Court assumed that equitable tolling was available under that statute, based upon the agreement of the parties, but found that it was not warranted under the circumstances of that particular case.

petition was <u>pending</u> (as shown by exhibits).  It was not until petitioner wrote the West Virginia Supreme Court to find out if his appeal had reached it that he was informed that it was still pending.  As the record shows, the second habeas petition expressly included **all previous habeas petitions (claims) and appeals as grounds for relief** in the petition.

Petitioner believes it would be ". . .unconscionable to enforce the limitation period . . ." against him and a gross injustice would result if the court were to find somehow the petitioner erred in his application of law in regards to the timeliness of his petition.  The circumstances surrounding the filing of petitioner's appeal were beyond petitioner's control to the degree that the court, of its own motion, appointed counsel and left petitioner believing that the appeal was pending. The state court created a situation where petitioner could not reasonably be held accountable for timeliness when the petitioner's due diligence and the extra-ordinary circumstances are taken into account.  Time and again petitioner moved court to reconcile the appeal and allow for petitioner to move forward.  The conduct by the circuit court created the gap in time and was external to petitioner's own conduct.  Every **<u>exhibit</u>** presented confirms that I was prevented from filing in time (if this court finds that I was indeed out of time).

(# 10 at 5-6)[Emphasis in original].

Respondent's Reply asserts that there is no basis for equitable tolling in this case.  Specifically, Respondent states:

Petitioner contends that he is entitled to equitable tolling of the one year statute of limitations because his court-appointed attorney did not appeal the circuit court's decision denying his first state habeas petition (Case No. 00-MISC-350), and Petitioner was misled by the court into believing that his appeal petition was pending (Doc. # 10 at 3, 5.)

However, the documents submitted with Petitioner's response show only that the Clerk of the West Virginia Supreme Court advised Petitioner on June 19, 2002, in response to a letter from Petitioner received June 7, 2002, that his "court-appointed attorney, Mr. Herbert Hively, is in the process of filing a petition for

19

appeal." (Doc. # 10 at 28.) None of the documents provided by Petitioner indicate in any way that his habeas appeal was "pending." It is undisputed that no appeal of the habeas decision was filed.

Moreover, the circuit court records in that case show that Petitioner was well aware the four-month period for filing an appeal expired on December 21, 2001. (See Respondent's Exhibit 8, a copy of the file in Case No. 00-MISC-350.) However, it does not appear that Petitioner made any attempt to file a pro se appeal, which would have tolled the statute; nor does it appear that he made any inquiry to the Supreme Court regarding his appeal until June of 2002, six months after the appeal period expired. Nothing in the record supports Petitioner's allegations that he was misled by the circuit court; indeed, the record is devoid of any communication between the circuit court and Petitioner regarding his appeal.

Petitioner also claims that his attorney made certain representations to him regarding this appeal and the second state habeas petition filed by Petitioner in 2002. However, Petitioner has not submitted any correspondence from his attorney to document these claims, citing attorney-client privilege. (See Document # 10 at 4.) Respondent is therefore unable to respond to these allegations, other than to state that they are unsupported by the record. A copy of Petitioner's second state habeas petition (Case No. 02-MISC-232) is attached as Respondent's Exhibit 9.

* * *

Because there is no evidence that Petitioner was actively misled, or prevented somehow by Respondent from filing his claims on time, this Court should deny Petitioner's request for equitable tolling under the facts of this case.

Nor does the failure of Petitioner's attorney to file a state habeas appeal constitute the extraordinary circumstances necessary to warrant equitable tolling. There is no constitutional right to counsel in state post conviction proceedings. Coleman v. Thompson, 501 U.S. 722, 752 (1991), and a lawyer's mistake or negligence does not constitute justification for equitable tolling. See Taliani v. Chrans, 189 F.3d 597, 598 (7th Cir.

> 1999)(holding that attorney's mistake in calculating
> limitations period did not toll the one year statute of
> limitations); [other citations omitted].

(# 12 at 1-4).

It is clear that ignorance of the law, or the lack of appointment of counsel are not "extraordinary circumstances" sufficient to equitably toll the statute of limitations. See, e.g., United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004)(pro se status and ignorance of the law does not justify equitable tolling; Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 478 (5th Cir. 1991)(refusing to apply equitable tolling where the delay in filing was the result of a plaintiff's unfamiliarity with the legal process or his lack of legal representation); United States v. Flores, 981 F.2d 231, 236 (5th Cir. 1993)(pro se status, illiteracy, deafness, and lack of legal training are not external factors sufficient to excuse or extend limitations period); Fisher, supra, 174 F.3d at 714 ("ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing").

Furthermore, the Supreme Court of the United States has made it clear that "the principles of equitable tolling . . . do not extend to . . . garden variety claims of excusable neglect." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). In Rouse v. Lee, the Fourth Circuit recognized that, in general, "a mistake by a party's counsel in interpreting a statute of limitations does not

present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding." 339 F.3d 238, 248 (4th Cir. 2003)(citing Harris, *supra*, 209 F.3d at 331). Accordingly, the Fourth Circuit affirmed the district court's denial of equitable tolling of the AEDPA statute of limitations after Rouse's counsel missed the statutory deadline by one day.

In Rouse, the court held that "the actions of Rouse's attorneys are attributable to Rouse and, thus, do not present 'circumstances external to the party's own conduct.'" Id. at 249. The court further stated:

> Former counsel's errors are attributable to Rouse not because he participated in, ratified, or condoned their decisions, but because they were his agents, and their actions were attributable to him under standard principles of agency (citations omitted).

Id. The court further based its decision upon the fact that there is no right to counsel in a federal habeas proceeding, and "in the absence of constitutional ineffective assistance of counsel, attorney error is attributable to the petitioner." Id. at 250 (citations omitted). Based upon these rulings, it would appear that equitable tolling is not appropriate in the instant case based upon Mr. Hively's conduct alone.

Recently, however, in Goedeke v. McBride, 437 F. Supp. 590 (S.D. W. Va. 2006), the Honorable Joseph R. Goodwin, Chief Judge of this United States District Court, found that an absolute failure

22

to represent a habeas petitioner over the course of six years, while repeatedly informing the petitioner that a petition was being prepared, goes beyond simple attorney negligence, and constitutes circumstances that would support the equitable tolling of the AEDPA statute of limitations.  While the circumstances here may not be as egregious as in <u>Goedeke</u>, that case stands for the proposition that an absolute failure by counsel can support equitable tolling under certain circumstances.

It is clear that Petitioner was attempting to move his state collateral proceedings forward and repeatedly sought additional time for filing a proper Petition for Appeal from the denial of his first habeas petition to no avail.[5]  It further appears that Petitioner was relying upon the pending motions to extend the appellate filing period at the time that his Petition for Appeal should have been filed in the SCAWV on December 21, 2001. Furthermore, it appears that, as of that time, Mr. Hively was unclear concerning his appointment as appellate counsel for Petitioner.

These factors were complicated by Petitioner's filing of a second <u>pro se</u> Petition for Habeas Corpus in the Circuit Court of Kanawha County, and the subsequent appointment of Mr. Hively to represent Petitioner in that matter as well.  It appears that Mr.

---

[5]  In the undersigned's experience with review of state habeas proceedings, such motions for extension of time to file a Petition for Appeal are routinely granted.

Hively may have believed that the filing of the second habeas petition, which included claims raised in the first petition, subsumed the first habeas petition, and that an appeal was no longer necessary.

At any rate, these circumstances certainly appear to establish extraordinary circumstances beyond Petitioner's control, or external to his own conduct, that prevented him from filing a timely Petition for Appeal, and that Petitioner should not be penalized for the inaction of the court and his counsel, who really was not acting as his counsel at the time. Under these circumstances, equitable tolling is in the interests of justice, and a decision on the merits of Petitioner's claims for habeas corpus relief is warranted.

For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's present Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (# 1) is untimely under 28 U.S.C. § 2244(d)(1). However, the undersigned further proposes that the presiding District Judge **FIND** that there are extraordinary circumstances that warrant the equitable tolling of the statute of limitations, and that Petitioner's federal petition is timely in light of the equitable tolling of the statute.

In the alternative, the undersigned proposes that the presiding District Judge **FIND** that the Circuit Court's failure to

rule on the motions for extension of time continued the pendency of Petitioner's first habeas corpus petition until the first habeas petition was "rolled into" the second habeas petition. Under such analysis, the statute of limitations would have been tolled throughout the pendency of Petitioner's state habeas corpus proceedings. See Taylor v. Lee, 186 F.3d at 561. Petitioner's second habeas appeal was refused on January 27, 2009. At that time, there were 24 days remaining under the statute of limitations. Using the prisoner mailbox rule, Petitioner filed his federal petition 23 days later on February 20, 2009. Accordingly, under this alternative analysis, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's present section 2254 petition was timely filed.

**B.   Petitioner's Motion for Stay.**

On June 16, 2006, the SCAWV issued its opinion in In re: Renewed Investigation of the State Police Crime Laboratory, Serology Division, 633 S.E.2d 762 (W. Va. 2006) ("Zain III"). In that decision, the Court again addressed whether serologists in the West Virginia State Police Crime Lab, other than Fred Zain, falsified evidence in criminal prosecutions. The SCAWV's decision held:

> After careful review of the Stolorow/Linhart findings, the special judge's report, and the briefs of the prisoners and the State, this Court concludes that there is insufficient evidence of intentional misconduct to justify invalidating the work of serologists other than Zain.

25

<u>Id.</u> at 767.  However:

> because of the significant number, frequency, and types
> of errors which Stolorow discovered in the work of the
> Crime Lab serologists, this Court finds it necessary to
> enact additional safeguards to ensure that prisoners
> against whom serologists offered evidence receive a
> thorough, timely and full review of their challenges to
> the serology evidence.

<u>Id.</u> at 769.  Thus, the SCAWV set up a special habeas corpus procedure to be utilized by those prisoners against whom serologists, other than Zain, had offered evidence.

Accordingly, in habeas corpus cases involving serologists other than Zain, "a prisoner who challenges his or her conviction must prove that the serologist offered false evidence in his or her prosecution."  Also the prisoner must satisfy the following standards indicating that a new trial is warranted: (1) The evidence must appear to have been discovered since trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained; (2) It must appear from facts stated in his affidavit that the defendant was diligent in discovering the new evidence, and that it could not have been discovered with due diligence before the trial; (3) Such evidence must be new and material, and not merely cumulative; (4) The evidence must be such that it ought to produce an opposite result at a new trial on the merits; and (5) A new trial will generally be refused if the sole object of the new evidence is to discredit or impeach an opposing witness.  <u>Id.</u> at 769 (citing <u>State v. Frazier</u>,

253 S.E.2d 534 (W. Va. 1979)).

Concerning the special procedures, the SCAWV further held that a prisoner against whom a serologist other than Zain offered evidence is to be granted a full habeas corpus hearing on the issue of the serology evidence, with counsel appointed to represent him or her.  The Court further held that the Circuit Courts must review the serology evidence "with searching and painstaking scrutiny" and must draft "a comprehensive order" which includes "detailed findings as to the truth or falsity of the serology evidence."  If the Circuit Court finds that the evidence was false, then the Circuit Court must determine whether the prisoner has shown the necessity of a new trial based on the five Frazier factors.  Id. Finally, the SCAWV held that such proceedings must be conducted in as reasonably timely manner as possible, and that such proceedings are not subject to the res judicata limitations normally applied to state habeas corpus proceedings.  Id.

The SCAWV further specifically held:

In order to guarantee that the serology evidence offered in each prisoner's prosecution will be subject to searching and painstaking scrutiny, this Court now holds that a prisoner who was convicted between 1979 and 1999 [footnote omitted] and against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence may bring a petition for a writ of habeas corpus based on the serology evidence despite the fact that the prisoner brought a prior habeas corpus challenge to the same serology evidence and the challenge was finally adjudicated.

Id. at 770.

27

Petitioner, who was convicted during this time period, apparently had evidence that was tested by State Police Crime Lab serologists, other than Fred Zain, and, thus, was eligible to file such a petition.  Petitioner has requested that this court stay his federal petition pending the exhaustion of his <u>Zain III</u> habeas petition, which is currently pending in the Circuit Court of Kanawha County.  Petitioner's Motion for Stay asserts as follows:

> Petitioner moves this honorable court to hold the filed petition in abeyance due to particular grounds not yet exhausted.
>
> The Petitioner filed a timely state habeas petition on September 18, 2000 in the state court and followed all state rules.  My appeal of the state Circuit [C]ourt's denial was heard on oral arguments January 27, 2009; giving me the opportunity to finally exhaust the grounds following state procedures.  The appeal was denied [o]n or about February 4, 2009.
>
> The West Virginia Supreme Court came out with a riling regarding the state's serology lab, allowing for some inmates to file a habeas under **<u>Zain3</u>** and have a hearing. I was appointed counsel and the claim is still pending.
>
> I am requesting then that my petition be held in abeyance until this ground has been adjudicated and I can exhaust it also.  There are going to be Constitutional issues raised.
>
> I pray that this honorable court will grant this motion for stay and abeyance.

(# 2).

Respondent's Response in Opposition to the Motion for Stay and Abeyance argues:

> Should Petitioner's <u>Zain III</u> state habeas proceedings result in the discovery of new evidence relevant to his guilt or innocence, after exhausting his state remedies

> Petitioner may file a new federal petition based upon
> newly-discovered evidence pursuant to 28 U.S.C. §
> 2244(d)(1)(D). Therefore, the Petitioner is at no risk
> of losing his right to seek federal habeas relief on
> these grounds once he has fully exhausted his <u>Zain III</u>
> claims in the state courts.

(# 9 at 2).

The undersigned agrees with Respondent's analysis. The SCAWV's decision to allow certain state inmates whose cases involved the work of serologists at the West Virginia State Police Crime Laboratory to file a special habeas corpus petition is a separate issue from the issues raised in Petitioner's prior state habeas corpus petitions. Those petitions did not concern any serology evidence. Should the state court hearing Petitioner's <u>Zain III</u> habeas petition find that there is newly-discovered evidence concerning Petitioner's guilt or innocence, such a decision would trigger a new one-year statute of limitations which would run from the date of that decision, and Petitioner would have an opportunity to file a new section 2254 habeas petition under 28 U.S.C. § 2244(d)(1)(D). There is no basis to stay the present proceeding pending the exhaustion of the <u>Zain III</u> proceedings.

<b><u>RECOMMENDATION</u></b>

It is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Respondent's Motion to Dismiss Petition as Untimely Filed (# 7), **DENY** Petitioner's Motion for Stay and Abeyance of Petition (# 2), and again refer this matter to the undersigned for

additional proceedings and to submit a proposed ruling on the merits of Petitioner's habeas corpus petition.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on the opposing party, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and counsel of record.

_____July 23, 2009_____
            Date

Mary E. Stanley
United States Magistrate Judge