UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DAVID RABB,

      Petitioner

v.                              CIVIL ACTION NO. 2:09-0159

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

      Respondent

<u>MEMORANDUM OPINION AND ORDER</u>

Pending are (1) a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed February 23, 2009, (2) petitioner's motion for partial summary judgment, filed April 5, 2010, and (3) respondent's renewed motion for summary judgment, filed July 15, 2010.

This action was previously referred to Mary E. Stanley, United States Magistrate Judge, who, on February 24, 2011, submitted her Proposed Findings and Recommendation ("PF&R") pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). On March 21, 2011, both parties objected to the PF&R. The court does not revisit the comprehensive factual and procedural development accomplished by the magistrate judge.

The court summarizes below each of the recommendations made by the magistrate judge, the objections lodged thereto, and the disposition as to each.

I.

A.   Ground One

In Ground One, petitioner alleges that bodily harm is a fact that increases a kidnapping sentence from a term of years to a life term.  As such, he asserts that fact must be alleged in the indictment and found by a jury beyond a reasonable doubt before a life sentence may be imposed.  That did not occur as to the kidnapping offenses alleged in Counts Two and Four that resulted in petitioner's life sentences.  He asserts that he has suffered a corresponding deprivation of his Sixth and Fourteenth Amendment rights.

After a thorough recitation and discussion of precedent, the magistrate judge concluded that petitioner was entitled to relief.  Respondent's objection comes in six parts, only the first of which the court need reach.

2

Respondent asserts that the sentence for one convicted under section 61-2-14a is life imprisonment with the chance of a reduction to a term of years depending upon sentencing findings made by the circuit court as to mitigating factors.  Those, and other, putative mitigating factors are found in the third and fourth statutory provisos that follow the material portions of section 61-2-14a set forth below:

> If any person, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this State or within this State, or otherwise kidnap any other person, for the purpose or with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage of any sort, or for the purpose or with the intent of shielding or protecting himself or others from bodily harm or of evading capture or arrest after he or they have committed a crime, he shall be guilty of a felony, and, upon conviction, shall be punished by confinement in the penitentiary for life . . . [without mercy] . . . . [1] [P]rovided, [t]hat the jury may . . . recommend mercy . . . . : [and] [2] [p]rovided . . . [that] if the accused pleads guilty, the court may . . . [find an eligibility] for parole . . . . : [and] [3] [p]rovided further, [t]hat in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without bodily harm having been inflicted upon him, but after ransom, money or other thing, or any concession or advantage of any sort has been paid or yielded, the punishment shall be confinement in the penitentiary for any term of years not less than twenty: And [4] provided further, [t]hat in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without bodily harm having been inflicted upon him, but without ransom, money or other thing, or any concession or advantage of any sort having been paid or

3

> yielded, the punishment shall be confinement in the
> penitentiary for any term of years not less than ten.

W. Va. Code § 61-2-14a (1997).

At the outset, it is important to note the very
circumscribed nature of the collateral review process.  The court
is not conducting de novo appellate review of the supreme court
of appeals' refusal to hear petitioner's direct appeal.  Title 28
U.S.C. § 2254(d) provides in pertinent part as follows:

> An application for a writ of habeas corpus . . . shall
> not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings
> unless the adjudication of the claim--
>
> > . . . . resulted in a decision that was
> > contrary to, or involved an unreasonable
> > application of, clearly established Federal
> > law, as determined by the Supreme Court of
> > the United States . . . .

28 U.S.C. § 2254(d) (emphasis added).

As noted by the magistrate judge, neither the direct
nor collateral review processes in West Virginia explicitly
adjudicated petitioner's Ground One claim.[1]  The applicable

---

[1]As further noted by the magistrate judge, petitioner raised
Ground One in his April 8, 1999, amended petition for appeal
filed just over two weeks after the decision in Jones v. United
States, 526 U.S. 227 (1999). (See PF&R at 31 ("It appears that
the [April 8, 1999] amended petition was filed in light of the
Supreme Court's decision in United States v. Jones, 526 U.S. 227
(1999), which was decided less than one month earlier.")).

4

standard in such a setting is found in <u>Bell v. Jarvis</u>, 236 F.3d 149 (4th Cir. 2000):

> [W]e may not "presume that [the] summary order is indicative of a cursory or haphazard review of [the] petitioner's claims."  Rather, the state court decision is no less an "adjudication" of the merits of the claim and must be reviewed under the deferential provisions of § 2254(d)(1).  In such cases, we conduct an independent examination of the record and the clearly established Supreme Court law . . . . but we must still "confine our review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"

<u>Bell v. Jarvis</u>, 236 F.3d 149, 158 (4th Cir. 2000) (en banc) (citations omitted).

It is also essential to confine the section 2254(d) inquiry appropriately from the standpoints of both content and timing.  Respecting content, "[c]learly established federal law consists of the Supreme Court's holdings, not its dicta, at the time of the relevant state decision."  <u>Campbell v. Polk</u>, 447 F.3d 270, 275 (4th Cir. 2006) (emphasis added) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).

Respecting timing, the focus is not Supreme Court precedent at the conclusion of state habeas proceedings, but rather the shape of things on the date when direct appellate

review terminated.  <u>See</u> <u>Hyatt v. Branker</u>, 569 F.3d 162, 172 (4th Cir. 2009) ("The Supreme Court issued its opinion in <u>Gonzalez-Lopez</u> four years after the Supreme Court of North Carolina ruled on Hyatt's direct appeal. . . . . Because Hyatt's challenge fails even under <u>Gonzalez-Lopez</u>, we need not parse precisely what federal law was 'clearly established' on this point at the time of the Supreme Court of North Carolina's ruling."); <u>Hartman v. Lee</u>, 283 F.3d 190, 195 n.4 (4th Cir. 2002) ("Although Hartman forswears reliance on <u>Jones</u> and <u>Apprendi</u>, he asserts that '[i]f those decisions were to apply retroactively . . . , they would support [his] position.' However, even if <u>Jones</u> and <u>Apprendi</u> applied to cases on collateral review, they would not assist us in determining whether the decision of the state court was entitled to deference under § 2254(d)(1), because those cases were decided long after the ruling of the North Carolina Supreme Court [on direct review]."); <u>Daniels v. Lee</u>, 316 F.3d 477, 493 (4th Cir. 2003) ("The phrase 'the time of the relevant state court decision,' . . . 'obviously refers to the time of the state court conviction being attacked . . . and not the time of the state court decision denying collateral relief from the conviction.'") (quoting <u>Williams v. Cain</u>, 229 F.3d 468, 475 n. 6 (5th Cir. 2000)).

The court must thus tailor its analysis to clearly
established Supreme Court precedent as of October 12, 1999, the
date that the United States Supreme Court denied <u>certiorari</u> to
petitioner following the earlier denial on May 4, 1999, of his
direct appeal to the supreme court of appeals.  It thus matters
not for present purposes what transpired thereafter in <u>Apprendi</u>
<u>v. New Jersey</u>, 530 U.S. 466 (2000), <u>Harris v. United States</u>, 536
U.S. 545 (2002), <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), or the
remaining several decisions in the watershed Sixth Amendment
line.  Only <u>Jones v. United States</u>, 526 U.S. 227 (1999), and
those cases preceding it, are relevant at this time for purposes
of ascertaining clearly established Supreme Court precedent.

The decision in <u>Jones</u> addressed whether the federal
carjacking statute found at 18 U.S.C. § 2119 contained three
distinct offenses or a single crime with a choice of three
maximum penalties.  If the latter, the Supreme Court would have
been called upon to address whether two of the three potential
penalties recited only sentencing factors, for which a specific
charge and jury finding would not be necessary.  The majority
concluded that "the better reading is of three distinct offenses,
particularly in light of the rule that any interpretive

7

uncertainty should be resolved <u>to avoid serious questions</u> about the statute's constitutionality." <u>Id.</u> at 229 (emphasis added).

This underscored language, and the discussion found in section II of the <u>Jones</u> decision dealing exclusively with statutory construction issues, might well lead one to conclude that the section III Fifth and Sixth Amendment discussion qualifies only as dicta, and thus not a source of clearly established Supreme Court precedent. Nevertheless, the court will consider the constitutional principles espoused in section III as it attempts to divine the nature of clearly established Supreme Court precedent at the time of <u>Jones</u>.

As noted by the magistrate judge, petitioner mentions not only <u>Jones</u> but also <u>In re Winship</u>, 397 U.S. 258, 367 (1970), <u>Mullaney v. Wilbur</u>, 421 U.S. 684 (1975), <u>Patterson v. New York</u>, 432 U.S. 197 (1977), and <u>McMillan v. Pennsylvania</u>, 477 U.S. 79 (1986). Prior to discussing <u>Jones</u>, then, it seems appropriate to examine these important cases that preceded it. The analysis of these four decisions is simplified by the fact that the majority opinion in <u>Jones</u> discusses each. In fact, it offers a concise summary of the content of Supreme Court precedent as it stood immediately following the decision in <u>Patterson</u>:

With one caveat, therefore, <u>Patterson</u> left the States

8

free to choose the elements that define their crimes, without any impediment from <u>Winship</u>.  The caveat was a stated recognition of some limit upon state authority to reallocate the traditional burden of proof, which in that case was easily satisfied by the fact that "at common law the burden of proving" the mitigating circumstances of severe emotional disturbance "rested on the defendant."  While a narrow reading of this limit might have been no more than a ban on using presumptions to reduce elements to the point of being nominal, <u>a broader reading was equally open, that the State lacked the discretion to omit "traditional" elements from the definition of crimes and instead to require the accused to disprove such elements</u>.

<u>Jones</u>, 526 U.S. at 241 (emphasis added) (citations omitted).

So under the broadest reading of the law following <u>In re Winship</u>, <u>Mullaney</u>, and <u>Patterson</u>, clearly established Supreme Court precedent held only that the accused could not be burdened with proving traditional elements of the crime of which he was accused.  This is significant in light of observations in one authoritative legal encyclopedia concerning the traditional elements for kidnapping:

Kidnapping . . . has been variously defined both at common law and under the statutes, and in general usage means the carrying away of a person by unlawful force or fraud and against his or her will, or a person's seizure and detention for the purpose of so carrying the person away.

51 C.J.S. <u>Kidnapping</u> § 1 (elec. ed. 2011).  Neither bodily harm, nor any of the other offense characteristics found in the third and fourth provisos of section 61-2-14a, would thus be considered

9

as elements of kidnapping as commonly understood under West Virginia law or elsewhere across the United States at the time Patterson was decided.  As the Supreme Court precedent existed at the time of Patterson, then, one could not have forecast that the contents of the third and fourth provisos would have to be charged in the indictment and found by the jury beyond a reasonable doubt.

The inquiry then moves to McMillan.  In that case, the Pennsylvania Legislature treated visible possession of a firearm as a sentencing factor to be applied by the court by a preponderance of the evidence once the accused was convicted of certain enumerated offenses beyond a reasonable doubt.  The Supreme Court discerned no constitutional error in the process.  As Justice Souter recognized in the majority opinion in Jones, however, the decision in McMillan "did observe that the result might have been different if proof of visible possession had exposed a defendant to a sentence beyond the maximum that the statute otherwise set without reference to that fact."  Jones, 526 U.S. at 242.  But the decision in Jones reiterates how uncertain that proposition was at the time:

> The dissent repeatedly chides us for failing to state
> precisely enough the principle animating our view that
> the carjacking statute, as construed by the Government,
> may violate the Constitution.  The preceding paragraph

10

in the text expresses that principle plainly enough,
and we restate it here: under the Due Process Clause of
the Fifth Amendment and the notice and jury trial
guarantees of the Sixth Amendment, any fact (other than
prior conviction) that <u>increases the maximum penalty
for a crime</u> must be charged in an indictment, submitted
to a jury, and proven beyond a reasonable doubt.
Because our prior cases <u>suggest rather than establish
this principle</u>, our concern about the Government's
reading of the statute rises only to the level of
doubt, not certainty.

The constitutional safeguards that figure in our
analysis concern <u>not the identity of the elements
defining criminal liability</u> but only the required
procedures for finding the facts <u>that determine the
maximum permissible punishment</u>; these are the
safeguards going to the formality of notice, the
identity of the factfinder, and the burden of proof.

<u>Id.</u> at 243 n.6 (emphasis added) (citation omitted).

        After discussing other cases following <u>McMillan</u>,

including <u>Almendarez-Torres v. United States</u>, 523 U.S. 224

(1998), but not further illuminating the rules applicable in the

Fifth and Sixth Amendment setting, the decision in <u>Jones</u>

concluded with this telling observation:

        In sum, there is reason to suppose that in the
        present circumstances, however peculiar their details
        to our time and place, the relative diminution of the
        jury's significance would merit Sixth Amendment
        concern. <u>It is not, of course, that anyone today would
        claim that every fact with a bearing on sentencing must
        be found by a jury</u>; we have resolved that general issue
        and have no intention of questioning its resolution.
        The point is simply that diminishment of the jury's
        significance by removing control over facts determining
        a statutory sentencing range <u>would resonate</u> with the
        claims of earlier controversies, to raise a genuine

                                11

Sixth Amendment issue <u>not yet settled</u>.
<u>Id.</u> at 249 (emphasis added).

Prior to reaching the provisos, the West Virginia statute unambiguously provides for a life sentence if it is charged and found by the jury beyond a reasonable doubt that one has taken another, by force or similar involuntary means, intending to either receive money or things in return, or to protect the taker from bodily harm or aid in his escape from law enforcement after he committed a crime.  That is the crime the Legislature sought to punish with a life term.  The fact that the life term might be diminished by other judicially found facts in the third and fourth provisos would not have given rise to constitutional concerns at the time of <u>Jones</u>.  Given the state of Supreme Court precedent at that time, one cannot fault the supreme court of appeals for failing to overrule over thirty years of accumulated precedent applying section 61-2-14a.  <u>See</u>, <u>e.g.</u>, <u>Pyles v. Boles</u>, 148 W. Va. 465, 480-81, 135 S.E.2d 692, 702 (1964) ("Inasmuch as the provisions of Section 14a, Article 2, Chapter 61, Code, 1931, as amended, relating to the different punishments to be imposed upon a person who is found guilty of the offense of kidnapping, do not state or prescribe any element of the offense charged in an indictment for such offense, it is

12

not necessary to allege or deny the matters mentioned in those provisions, the presence or absence of which, according to the proof, controls and determines the character and the extent of the punishment to be imposed.").

Assuming the supreme court of appeals' denial of review could be characterized as a misapplication of clearly established law, the error would not be deemed an unreasonable application of that evolving jurisprudence. <u>Lovitt v. True</u>, 403 F.3d 171, 178 (4th Cir. 2005)("Similarly, 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. <u>Rather, that application must also be unreasonable</u>.'") (emphasis added); <u>Hunt v. Lee</u>, 291 F.3d 284, 290 (4th Cir. 2002) ("This standard is more stringent than reviewing for error or incorrectness. On habeas review, it is not sufficient in meeting the § 2254(d)(1) standard merely to find the state court's decision erroneous or incorrect; <u>we must also find it unreasonable</u>.")(citing <u>Williams</u>, 529 U.S. at 411) (emphasis added).

To the extent any doubt lingers respecting that conclusion, it is noteworthy that challenges in comparable settings have been turned away even following the decisions in

Apprendi and Blakely v. Washington, 542 U.S. 296 (2004).  See,
e.g., State v. Tschilar, 27 P.3d 331, 334 (Ariz. 2009) (voluntary
release of kidnapping victims unhurt deemed a mitigating factor
relevant solely for sentencing purposes); State v. Delgado, 690
N.W.2d 787, 799 (Neb. 2005) ("The factors which determine which
of the two penalties[, namely, life imprisonment or a term of
years,] is to be imposed are not elements of the offense of
kidnapping, but are simply mitigating factors which may reduce
the sentence of those charged under this section, and their
existence or nonexistence should properly be determined by the
trial judge."); see also, e.g., Granados v. Quarterman, 455 F.3d
529, 536-37 (5th Cir. 2006), cert. denied, 549 U.S. 1081 (2006)
("[T]he state was required to prove beyond a reasonable doubt
every finding prerequisite to exposing Granados to the maximum
penalty of death. We are not persuaded that Texas violated any
principle of Apprendi or Ring in the trial of this case. . . .
Put another way, a finding of mitigating circumstances reduces a
sentence from death, rather than increasing it to death."); State
v. Flores, 93 P.3d 1264, 1266 (N.M. 2004) ("We hold . . . because
mental retardation is a factual issue that operates to reduce
rather than to increase the maximum punishment permitted by a
verdict of guilt, the Sixth Amendment does not require the
question of mental retardation to be decided by a jury beyond a

14

reasonable doubt."); <u>People v. Cleveland</u>, 87 Cal. App.4th 263,
270 (Cal. App. 2 Dist. 2001) ("Unlike in the 'hate crime'
provision in <u>Apprendi</u>, section 654 is not a sentencing
'enhancement.' On the contrary, it is a sentencing 'reduction'
statute. Section 654 is not a mandate of constitutional law.
Instead, it is a discretionary benefit provided by the
Legislature to apply in those limited situations where one's
culpability is less than the statutory penalty for one's crimes.
Thus, when section 654 is found to apply, it effectively
'reduces' the total sentence otherwise authorized by the jury's
verdict. The rule of <u>Apprendi</u>, however, only applies where the
non-jury factual determination increases the maximum penalty
beyond the statutory range authorized by the jury's verdict.").[2]

---

[2]Consideration of our court of appeals' precedent prior to
October 1999, and the supreme court of appeals' decisional law
following that time frame, is also significant. <u>Compare</u> <u>Hart v.
Coiner</u>, 483 F.2d 136, 142 (4th Cir. 1973) ("West Virginia pro-
vides for a mandatory life sentence for only three other crimes
-- first-degree murder, W. Va. Code § 61-2-2 (1966); rape, W. Va.
Code § 61-2-15 (1966); and kidnapping, W. Va. Code § 61-2-14a
(1966). . . . <u>A life sentence for kidnapping . . . is not manda-
tory</u> where the victim is returned unharmed, with or without the
payment of ransom.") (emphasis added), <u>with</u> <u>State v. Haught</u>, 218
W. Va. 462, 467, 624 S.E.2d 899, 904 (2005) ("We believe it is
perfectly reasonable to construe W. Va. Code § 61-2-14a as a
statute that provides for the possible reduction of a defendant's
sentence based on any additional findings by the trial judge and
not one that permits the enhancement of a defendant's sentence. .
. . Therefore, we hold that our kidnaping statute . . . does not
provide for the enhancement of a defendant's sentence beyond the
(continued...)

Inasmuch as the discretionary denial of direct appellate review in this instance was, at the time of the denial, neither contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, the court sustains respondent's objection on the Ground discussed above.  The court, accordingly, concludes that respondent is entitled to judgment as a matter of law on Ground One.

B.   Grounds Two and Four

As noted by the magistrate judge, Grounds Two and Four are related.  Ground Two alleges jury selection errors that putatively deprived petitioner of his due process and fair trial rights secured by the Sixth and Fourteenth Amendments.  Ground Four alleges violations of the same constitutional provisions arising out of the circuit court's refusal to grant a change of venue.

_____

[2](...continued)
statutory maximum based on additional facts found by the trial judge . . . .").

16

The magistrate judge fully analyzed both Grounds, concluding as follows:

> Petitioner has not provided clear and convincing evidence to rebut the presumption of correctness of the State habeas courts' findings. Petitioner has not shown that his conviction was fundamentally unfair because of prejudicial media exposure. Moreover, Petitioner has failed to demonstrate that any outside source had a substantial and injurious effect or influence on the jury's verdict. Furthermore, because there was no prejudice to Petitioner's defense from pre-trial publicity, there was no prejudice from the failure to grant a change of venue.

(PF&R at 67).  Based upon this analysis, the magistrate judge recommends that the court conclude that petitioner failed to demonstrate that the state's denial of habeas corpus relief on Grounds Two and Four was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Petitioner's objections raise nothing new.  For example, he notes again, correctly, that implied bias may be found despite a prospective juror's protestations of impartiality.  See, e.g., United States v. Torres, 128 F.3d 38, 45 (2nd Cir. 1997) ("[A] finding of implied bias does not rely on any questioning by the trial judge as to the prospective juror's assessment of his or her partiality.").

Our court of appeals has treated Justice O'Connor's concurring opinion in Smith v. Phillips, 455 U.S. 209, 102 S.Ct.

17

940, 71 L.Ed.2d 78 (1982), as the best statement of the implied bias doctrine.  See, e.g., Conaway v. Polk, 453 F.3d 567, 587 n. 21 (4th Cir. 2006) ("We have consistently treated Justice O'Connor's concurrence in Smith as the authoritative articulation of implied bias.").  The doctrine plainly has no application here.  See, e.g., Person v. Miller, 854 F.2d 656, 664 (4th Cir. 1988) (recognizing implied bias is limited to extreme situations where the relationship between a prospective juror and the case is such that "it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances . . . ." (quoting Smith, 455 U.S. at 222 (O'Connor, J., concurring)).

The court, accordingly, concludes that respondent is entitled to judgment as a matter of law on Grounds Two and Four of petitioner's section 2254 petition.

C.   Ground Three

Ground Three alleges a deprivation of petitioner's Sixth and Fourteenth Amendment rights arising out of the circuit court's failure to sever Counts Two and Four, the putatively unrelated kidnapping counts found in the indictment.  The magistrate judge concluded petitioner failed to establish the

18

fundamental unfairness of trying the two counts together.  In his objections, petitioner reiterates that he would have testified in his own behalf if the circumstances alleged in Count Two surrounding the kidnapping of Jay Ming Chu were the subject of a separate trial.  That speculative contention aside, petitioner must still, as noted by the magistrate judge, prove the joinder of the offenses resulted in fundamental unfairness.  See United States v. Lane, 474 U.S. 438, 446 n.8 (1986) ("[M]isjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial.").  He has not done so.

The court, accordingly, concludes that respondent is entitled to judgment as a matter of law on Ground Three.

D.   Grounds Five and Six

The court consolidates its consideration of these Grounds inasmuch as petitioner objects to each on the same basis.

In Ground Five, petitioner alleges that the circuit court deprived him of the rights guaranteed by the Sixth and Fourteenth Amendments when it declined to continue the trial in light of an untimely disclosure of evidence.  The evidence

19

consisted of a partial confession and other statements he made to
the apprehending law enforcement officers in Chicago.  The
magistrate judge concluded as follows:

> All of the officers from Chicago who were available to
> testify were present in Charleston from the day of the
> disclosure by Officer Trinidad of Petitioner's alleged
> verbal "confession" to taking the vehicle from a "lady"
> in Charleston, to the time that they testified at the
> trial, four days later. Thus, Petitioner's counsel had
> ample time to try to interview the officers and prepare
> their defense in light of this evidence. Petitioner has
> demonstrated no actual prejudice from the late
> disclosure or failure to continue the trial in light
> thereof.
>
>           . . . .
>
> Furthermore, the trial record demonstrates that defense
> counsel thoroughly cross-examined both officers on the
> fact that this alleged admission by Petitioner was not
> placed in any written report and called into doubt
> whether Petitioner actually responded as they stated.

(PF&R at 82, 85).  In Ground Six, petitioner asserts that his due
process and fair trial rights under the Sixth and Fourteenth
Amendments were violated based upon the circuit court's failure
to suppress the partial confession and other statements.  The
magistrate judge notes that, under the totality of the
circumstances, petitioner has not demonstrated that the evidence
violated either his Sixth or Fourteenth Amendment rights.

        In his objections, petitioner "incorporates by
reference, and, thus, reiterates his argument raised in his

petition relative to these issues."  (Pet.'s Objecs. at 4).  He then adds, however, "that he finds that the Magistrate appears to be correct in her finding in relation to these grounds" and that he only "object[s] as a matter of formality."  (Id.)

To the extent petitioner objects to the proposed disposition of Grounds Five and Six, there is no basis to disturb the magistrate judge's thorough analysis.  The court, accordingly, concludes that respondent is entitled to judgment as a matter of law on Grounds Five and Six.

E.   Ground Seven

In Ground Seven, petitioner alleges an additional violation of his Sixth and Fourteenth Amendment rights arising out of the circuit court's refusal to dismiss the kidnapping charge alleged in Count Four of the state indictment relating to victim Julia Leopold as incidental to the commission of the robbery alleged in Count Three.

The magistrate judge cogently observes as follows from a factual perspective:

> Although the length of time Leopold was held was short, due to the fact that she was able to escape from the vehicle, she could still be considered kidnapped under the law. Additionally, Leopold was exposed to an

> increased risk of harm to herself and her unborn child
> while she was being held down by Petitioner in the
> vehicle.

(PF&R at 96).  Based upon this analysis, along with consideration

of Blockburger v. United States, 284 U.S. 299 (1932), and the

equivalent rule in West Virginia, the magistrate judge concluded

that "the kidnapping and . . . robbery of Leopold were separate

offenses and may be punished separately."  (PF&R at 97).  Having

considered petitioner's brief objection, which essentially

repeats his contentions below, the recommendation is found to be

unassailable.

The court, accordingly, concludes that respondent is

entitled to judgment as a matter of law on Ground Seven.


F.   Grounds Eight through Thirteen


Grounds Eight through Thirteen allege defense counsel

rendered constitutionally defective representation under the

Sixth and Fourteenth Amendments based upon their failures (1) to

advise him respecting bifurcation of the trial, (2) to move for

bifurcation, (3) to advise petitioner of the need to seek mercy

in light of the capital offenses he faced, (4) to retain a

competent identification expert, (5) to assert a diminished

capacity defense, and (6) to thoroughly investigate and prepare

his case for trial.

As the magistrate judge notes, the decisions respecting bifurcation and arguing mercy were purely strategic.  So too was the decision concerning the presentation of a diminished capacity defense.  Any errors relating to the investigation of the case or preparation for trial are either not errors at all or clearly not prejudicial.  In short, none of the alleged deficiencies approach the necessary showing under <u>Strickland v. Washington</u>, 466 U.S. 688 (1984).[3]  The remaining basis for ineffective assistance is readily dispatched as well.  Counsel proffered a competent identification expert.  The circuit court simply excluded that individual's testimony.  Petitioner's objections in no way diminish the accuracy of that ruling.[4]

_____

[3]The contention respecting mercy suffers from a substantive flaw as well.  The jury granted it on the Count Two kidnapping charge involving Ms. Chu.  Also, petitioner appears to assert that an assessment of his lawyers' decision-making, leading to the alleged deficiencies, must focus strictly on the lawyers' subjective explanations and beliefs formed at the time of trial.  Petitioner draws the inquiry too broadly in this federal habeas setting.  <u>See</u> <u>Premo v. Moore</u>, 131 S. Ct. 733, 740 (2011)("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.").

[4]To the extent petitioner challenges the circuit court's exclusion of his identification expert, the record discloses an acceptable discretionary exercise under West Virginia Rule of Evidence 702.  (PF&R at 118-19 (recounting circuit court's ruling).  There is no basis to disturb that well-supported conclusion, especially in light of the careful instructions given to the jury respecting identification issues.  (<u>See</u> PF&R at 120-21).

The court, accordingly, concludes that respondent is entitled to judgment as a matter of law on Grounds Eight through Thirteen.

G.   Grounds Fourteen through Sixteen

The remaining Grounds are adequately developed and resolved in the PF&R.  Petitioner offers only a one sentence objection, which incorporates the arguments he raised on these Grounds before the magistrate judge.  The magistrate judge having aptly found that those arguments were not meritorious, the court concludes that the objection is likewise.

The court, accordingly, concludes that respondent is entitled to judgment as a matter of law on Grounds Fourteen through Sixteen.

II.

Based upon a de novo review, and having found the petitioner's objections meritless, the court adopts and incorporates herein the magistrate judge's PF&R except as to Ground One.  It is ORDERED as follows:

24

1.   That petitioner's motion for partial summary judgment
     be, and it hereby is, denied;

2.   That respondent's renewed motion for summary judgment
     be, and it hereby is, granted;

3.   That petitioner's section 2254 petition be, and it
     hereby is, denied; and

4.   That this action be, and it hereby is, dismissed and
     stricken from the docket.

The Clerk is directed to forward copies of this written opinion and order to the pro se petitioner, all counsel of record, and the United States Magistrate Judge.

DATED:  March 31, 2011

John T. Copenhaver, Jr.
United States District Judge

25